IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ANTHONY THRASH *et al.*                                                                                    PLAINTIFFS
ADC #94228

V.                                      NO: 5:09CV00095 BSM/HDY

DAVID WHITE *et al.*                                                                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District
     Judge (if such a hearing is granted) was not offered at the
     hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Plaintiffs Anthony Thrash ("Anthony"), and Jean Thrash ("Jean"), husband and wife, filed this complaint on March 25, 2009, alleging that Defendants David White, Larry May, Ray Hobbs, and Larry Norris, all Arkansas Department of Correction ("ADC") officials, violated their constitutional rights by imposing a permanent ban on visitation between the two. On October 16, 2009, Defendants filed a motion for summary judgment, a brief in support, and a statement of facts (docket entries #11-#13). Plaintiffs filed a response, brief in support, and a statement of facts (docket entries #20-#22), on January 20, 2010.

### I. Standard of review

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must

view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II. Analysis

Anthony has been serving a life sentence for capital murder since November 1, 1985. Jean became acquainted with Anthony during his incarceration. In 1994, Jean sought visitation with Anthony as a friend, and was approved. On October 15, 1996, Jean, then known as Jean Smith, purchased a mobile home for $16,640 in cash. On October 27, 1996, Jean visited Anthony at the Cummins Unit. On October 30, 1996, Anthony escaped from prison. ADC officials were informed that on or about January 4, 1997, the mobile home, which had been located in Leland, Mississippi, had been moved. Approximately eight months later, Anthony and Jean were found residing together in Pennsylvania in the mobile home Jean had purchased.

Upon his return to the ADC, Anthony was incarcerated at the Maximum Security Unit in Tucker, Arkansas ("MSU"). On February 26, 1998, Anthony pled guilty to escape in the second degree, and received a six year sentence. Jean pled no contest to hindering apprehension or prosecution and received 36 months of unsupervised probation, and a fine.

On June 25, 1997, MSU Warden Randy Morgan revoked Jean's visiting privileges until

further notice. On January 29, 2004, May rejected a grievance appeal filed by Anthony requesting visitation with Jean. May also rejected Anthony's grievance requesting permission to marry Jean. However, White approved a September 10, 2004, request to allow Jean to be present at a January 26, 2005, ceremony at the MSU, where the two were married.

Despite Plaintiffs' various requests and grievances, their visitation has been restricted to telephone contact only, with no in-person visitation allowed. According to a grievance response from May, a "permanent restriction" has been placed on in-person visitation between the two, due to Jean's prior actions (docket entry #1, page #11).

Plaintiffs contend that the in-person visitation ban is a violation of their first amendment right to free association, due process rights under the fifth and fourteenth amendments, equal protection rights, and amounts to cruel and unusual punishment.

A. *Free association rights*

Incarceration certainly affects a prisoner's family, however, even though a prison regulation impinges on a wife's ability to visit her husband while he is incarcerated, such a restriction must be upheld if it is reasonably related to achieving a legitimate penological objective. *Goodwin v. Turner*, 908 F.2d 1395, 1399 (8th Cir. 1990). Obviously, maintaining a prison's security is a legitimate penological objective. There is no dispute that Jean was sentenced in connection with charges arising from her association with Anthony while he was an escapee. Prohibiting such an individual from having in-person visitation with the escapee is reasonably related to preventing such escapes, and also for limiting the opportunity for an escapee to receive assistance after his escape. Accordingly, the restriction is valid, and Defendants are entitled to summary judgment on Plaintiffs' first amendment claim.

*B. Due process*

Plaintiffs assert that prison officials' denial of visitation violates their procedural due process, because it is inconsistent with the ADC's own visitation guidelines. However, even if Defendants have failed to follow ADC policy, such a failure is not actionable.[1] *See Gardner v. Howard*, 109 F. 3d 427, 430 (8th Cir. 1997)(no § 1983 liability for violation of prison policy).

Plaintiffs contend that Defendants' denial of their visitation rights violates the right to substantive due process because the basis for the denial, a threat to security and good order of the prison, is untrue. As an initial matter, the Court notes that Plaintiffs have no liberty interest in in-person visitation that would invoke due process protection. In the context of prison visitation, the United States Supreme Court has determined that there is a liberty interest in prison visitation only if state law imposes substantive limitations on the discretion of prison officials to suspend or deny prison visitation. *Ky. Dept. Of Corr. v. Thompson*, 490 U.S. 454, 462 (1989). ADC policy imposes no such substantive limitation, and at all times relevant to this lawsuit has empowered the warden to restrict contact visitation consistent with unit policy and security needs (docket entry #11, exhibit F, page 10; Exhibit G, page 8). Likewise, denial of in-person visitation does not amount to an "atypical and significant" hardship that would itself give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).

Even assuming there was a liberty interest, Plaintiffs received all the due process that was required. Jean's requests for in-person visitation were considered but ultimately rejected. Anthony's requests through the grievance process were considered but denied. The requirements of due process

---

[1] As discussed below, ADC policy actually gives the warden the discretion to deny visitation when necessary.

are flexible, and not all deprivations of protected interests require a full evidentiary hearing before an impartial decision maker using a preponderance of evidence or higher standard. *Goff v. Dailey*, 991 F.2d 1437, 1440-1441 (8th Cir. 1993).

Although Plaintiffs suggest in their response brief (docket entry #21) that the law does not allow prison officials to ban in-person visitation, they have failed to cite any authority to support a claim that they have a liberty interest in in-person visitation, or that they have a right to more due process than what was provided. Indeed, Plaintiffs' brief contains no citations to any legal authority whatsoever. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' due process claims.

*C. Equal protection*

Plaintiffs also assert that the Defendants' denial of visitation is based on the fact that Jean is a Caucasian, and Anthony is an African American, and is therefore an equal protection violation. However, Plaintiffs have identified no other inmates who have been convicted of escape, and still have been allowed in-person visitation with another individual who was implicated in the escape, or effort to avoid capture.[2] Without evidence of a similarly situated couple who are treated differently, Plaintiffs cannot maintain an equal protection claim. *See Weiler v. Purkett*, 137 F.3d 1047, 1051-52 (8th Cir.1998) (en banc) ("The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.") In contrast, Defendants have provided an affidavit

---

[2]Plaintiffs have suggested that inmate Jerome Bargo escaped from custody, with the assistance of his brother, yet is still allowed in-person visitation with his brother. However, Plaintiffs have provided no specifics as to circumstances of the escape, or the charges that Bargo or his brother faced as a result.

from White, the MSU Warden, who has identified two African-American inmates who are married to Caucasian women, and who are allowed to visit their wives on a monthly basis (docket entry #11, exhibit A, paragraph #29). Although Plaintiffs dispute White's assertion because they are unaware of White's records, there is no indication that they have pursued any effort to verify his claim. Those facts, plus the fact that Plaintiffs' marriage was approved in the first place, causes the Court to believe that no reasonable fact finder could conclude that the denial of Plaintiffs' in-person visitation has anything to do with their race. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiffs' equal protection claims.

*D. Cruel and unusual punishment*

Finally, Plaintiffs assert that the visitation denial amounts to cruel and unusual punishment. Plaintiffs contend that the reason visitation is banned is to punish Anthony for "walking out of the Cummins Unit, through the front gates, thirteen years ago."

In essence, Plaintiffs contest as unconstitutional the conditions of Anthony's incarceration. To prevail on a such a claim, inmates must show: (1) the condition was serious enough to deprive them of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmates' or detainees' health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir.1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed.Appx. 906 (8th Cir. 2002)(unpub. per curiam).

Clearly, the visitation ban does not deprive Anthony of the minimum civilized measure of life's necessities, or constitute a risk of harm, and as such, is not unconstitutional. Plaintiffs have not identified any legal authority to suggest a permanent ban on in-person visitation constitutes cruel and unusual punishment, particularly when the inmate is able to communicate with his spouse

through other means. Defendants are entitled to summary judgment with respect to Plaintiffs' cruel and unusual punishment claims.

No material facts are in dispute. Defendants' prohibition of in-person visitation by Plaintiffs is reasonably related to a legitimate penological objective. Plaintiffs have no liberty interest in in-person visitation that would invoke the protections of due process, and even if such a liberty interest did exist, they received all the process that was due. Finally, Plaintiffs have failed to identify a similarly situated couple who is allowed in-person visitation, and nothing about the visitation restrictions amounts to cruel and unusual punishment. Accordingly, Defendants are entitled to summary judgment.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' motion for summary judgment (docket entry #11) be GRANTED, and Plaintiffs' complaint be DISMISSED WITH PREJUDICE.

DATED this __25__ day of February, 2010.

UNITED STATES MAGISTRATE JUDGE