# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ANTHONY THRASH *et al.*　　　　　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFFS
ADC #94228

V.　　　　　　　　　　　NO: 5:09CV00095 BSM/HDY

DAVID WHITE *et al.*　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

　　　　1.　　Why the record made before the Magistrate Judge is inadequate.

　　　　2.　　Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

　　　　3.　　The detail of any testimony desired to be introduced at the

1

> hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiffs Anthony Thrash ("Anthony"), and Jean Thrash ("Jean"), husband and wife, filed this complaint on March 25, 2009, alleging that Defendants David White, Larry May, Ray Hobbs, and Larry Norris, all Arkansas Department of Correction ("ADC") officials, violated their constitutional rights by imposing a permanent ban on visitation between the two. Plaintiffs initially advanced a number of constitutional claims. However, on June 4, 2010, United States District Judge Brian S. Miller dismissed all of Plaintiffs' claims, except for their claim that the visitation ban is an equal protection violation (docket entry #25). In his order, Judge Miller noted that Plaintiffs in their objections to a recommendation to dismiss presented evidence supporting their equal protection claim, and he referred the matter to the undersigned for an evidentiary hearing to determine whether there is any merit to Plaintiffs' claims that similarly situated individuals are treated differently than them. Pursuant to Judge Miller's order, a hearing was held on December 7, 2010. Plaintiffs appeared and testified, along with all Defendants. Also appearing and testifying were Jerome Bargo, an inmate identified as similarly situated to Anthony, yet treated differently; Ronald Staton, an

Arkansas State Trooper who was involved in the investigation of Anthony's escape from prison; Tommy James, the former deputy warden at the Tucker Maximum Security Unit; and Jay Winters, who was the Pope County jail administrator in 1988 when Bargo escaped from custody when he was held at the Pope County Jail.

## I.  Facts

Anthony has been serving a life sentence for capital murder since November 1, 1985. Jean enrolled in educational courses which were taught at the ADC, and through the courses, became acquainted with Anthony. In 1994, Jean was approved to visit Anthony as a friend. On October 30, 1996, Anthony escaped from the ADC's Cummins Unit, three days after a visit from Jean. Anthony made his way to Mississippi, where Jean had purchased a mobile home and was residing. Plaintiffs were found living together in Pennsylvania approximately eight months later, and Anthony was taken back to the ADC. Jean later pleaded guilty to hindering apprehension or prosecution. Although the two have not been allowed to visit each other since that time, White did approve a September 10, 2004, request to allow Jean to be present at a January 26, 2005, ceremony at the Tucker Maximum Security Unit, where the two were married.

After Jerome Bargo escaped from the Pope County Jail, he remained at large until June of 2004. Jerome Bargo had apparently been living in Venezuela until late 2003 or early 2004. After Jerome Bargo's arrest, his brother, James Bargo, pleaded guilty to obstruction of justice in connection with allegations that he assisted his brother while he was an escapee. Although Plaintiffs were not allowed to visit each other, James Bargo was allowed to visit Jerome Bargo, until about a week before the hearing, when James Bargo was removed from Jerome Bargo's approved visitor list.

## II. Analysis

Plaintiffs allege that Defendants violated their equal protection rights because, while Plaintiffs were not allowed to visit each other, Defendants allowed James Bargo and Jerome Bargo, both of whom are Caucasians, to visit. Plaintiffs contend they were not allowed to visit each other because Anthony is an African-American, and Jean is a Caucasian.

"The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051-52 (8th Cir.1998) (en banc). The circumstances leading to James Bargo's obstruction charge, and the hindering apprehension charge that Jean pleaded guilty to, appear to be somewhat similar. However, testimony at the hearing indicated that, while prison officials knew James Bargo had pleaded guilty to an obstruction charge, they did not know the details of the charge until shortly before the hearing. Because Anthony escaped from an ADC unit, ADC officials were actively involved in the investigation of the escape, and aware of the fact that investigators suspected Jean's possible role in his escape and/or continued evasion of authorities, even before the two were found living together. By contrast, ADC officials were not involved in the investigation of Jerome Bargo's escape, or his apprehension, because his escape was from a county facility. Although Jerome Bargo was an ADC inmate, ADC officials only received notice of the escape. Additionally, Winters testified that there was no suspicion at the time of Jerome Bargo's escape that anyone aided him in his efforts. Once the details of his obstruction charge were discovered, James Bargo was removed from Jerome Bargo's visitor list.

Plaintiffs failed to establish that any Defendant knew that James Bargo's obstruction charge

was related to his provision of assistance to Jerome Bargo while he was an escapee.[1] Thus, Plaintiffs failed to demonstrate that any Defendant was aware of any facts suggesting that Plaintiffs and Jerome Bargo were arguably similarly situated. Plaintiffs failed to prove that the differing treatment of Jerome Bargo evidenced any intent to discriminate. *See Cent. Airlines, Inc. v. United* States, 138 F.3d 333, 335 (8th Cir. 1998)(requiring intention or purposeful discrimination to establish an equal protection claim; unequal application of regulations alone insufficient); *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987)(inmate's equal protection claim failed because there was no allegation of intentional discrimination). In making the determination about the Defendants' intent in their treatment of Plaintiffs, the Court finds it inconsistent for White to have approved their marriage ceremony and now to be accused of discriminating against them for racial reasons. Moreover, other than Jerome Bargo, Plaintiffs identified no inmates who are or were allowed visitation with an individual involved in their escape or effort to avoid capture.[2] An isolated example of unequal treatment is insufficient to establish that the difference in treatment was motivated by Plaintiffs' membership in a protected class, or that it burdened a fundamental right. *See Inmates of Neb. Penal and Correctional Complex v. Greenholtz*, 567 F.2d 1368, 1381 (8th Cir. 1977) (two or three

---

[1]Although it was not introduced at trial, Plaintiffs previously submitted an affidavit from Gerri Field, the aunt of Jerome Bargo and James Bargo (docket entry #38). In the affidavit, Field writes that "James was not allowed to visit Jerome because of James conviction that had to do with Jerome's escape and Jerome being on escape" for 15 years, but that he was allowed to visit after waiting for several months. It is undisputed that prison officials knew James Bargo had a conviction, and that the conviction had to do with a charge made in connection with assistance James Bargo gave to Jerome Bargo while he was an escapee. However, the affidavit makes no claim that any Defendant knew the details of the conviction when James Bargo was approved for visitation.

[2]It is noteworthy that, in a previously filed affidavit, White identified two African-American inmates who are allowed to visit their Caucasian wives on a monthly basis (docket entry #11, exhibit A).

individual cases of discrimination insufficient to provide more than minimal support to an inference of classwide purposeful discrimination); *Fields v. Weber*, 2010 WL 4220534 at *4 (D.S.D. October 2010) (four examples of unequal treatment with respect to mail insufficient to establish equal protection violation, particularly given volume of mail at prison).  Not allowing a convicted murderer to have in-person visitation with an individual who has helped him evade authorities while he is an escapee is a legitimate security measure, and is not itself evidence of an equal protection violation.  Accordingly, Plaintiffs have not established an equal protection violation, and their complaint should be dismissed.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Plaintiffs' complaint be DISMISSED WITH PREJUDICE.

DATED this   23    day of December, 2010.

_____
UNITED STATES MAGISTRATE JUDGE